1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARLTON DWAYNE FIELDS,                    No.  2:21-cv-00548-KJM-EFB P

12                   Plaintiff,

13          v.                                  FINDINGS AND RECOMMENDATIONS

14    SECRETARY OF CDCR, et al.,

15                   Defendants.

16

17          Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action pursuant to 42

18    U.S.C. § 1983.  This action proceeds on plaintiff's Second Amended Complaint ("SAC") alleging

19    that officials at High Desert State Prison ("HDSP") violated his Eighth Amendment rights with

20    respect to the Covid-19 virus.  ECF No. 14; *see* ECF No. 15 (screening order finding SAC to state

21    potentially viable claims against the Secretary of the California Department of Corrections and

22    Rehabilitation ("CDCR"), the Warden of HDSP, and the Chief Medical Officer ("CMO") at

23    HDSP).

24          Before the Court is defendants' motion to dismiss the SAC under Rule 12(b)(6) and (b)(1)

25    of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies and,

26    alternatively, for failure to state a claim; defendants also assert immunity defenses.  ECF No. 25,

27    ("MTD").  Plaintiff has filed an opposition, and defendants have filed a reply.  ECF Nos. 28 &

28    29.  For the reasons discussed below, the defendants' motion to dismiss must be granted.

                                                  1

1    I.  Rule 12(b)(6) Standard

2          To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), "a complaint

3    must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

4    on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss,

5    the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v.*

6    *Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most

7    favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  *Jenkins*

8    *v. McKeithen*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).

9          The court may consider facts established by exhibits attached to the complaint.  *Durning*

10   *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *see also Steckman v. Hart Brewing*

11   *Co., Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (on Rule 12(b)(6) motion, court is "not required

12   to accept as true conclusory allegations which are contradicted by documents referred to in the

13   complaint.")  The court may also consider facts which may be judicially noticed, *Mullis v. United*

14   *States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record,

15   including pleadings, orders, and other papers filed with the court, *Mack v. South Bay Beer*

16   II.  The SAC

17          Plaintiff alleges that he "contracted Covid-19 as a result of [defendants'] refusal . . . to

18   take reasonable measures to abate it.  The defendants . . . violated the plaintiff's Eighth

19   Amendment right by subjecting him to . . . conditions that posed an unreasonable risk of harm

20   and . . . deliberate indifference to protect him from that harm."  SAC at 6.[1]

21          As to Defendant Secretary of CDCR, plaintiff alleges, he

22               was responsible for the for the transfer of the inmates who were
                 infected with Covid-19 at San Quentin to High Desert State
23               Prison[,] where plaintiff was housed.  He was notified by [the]
                 inmate appeals process that plaintiff was at risk of severe
24               complications of Covid-19 due to High Blood Pressure, and that the
                 plaintiff requested immediate isolation and release.  Despite his
25               knowledge of the transferring inmates being infected, and the
                 plaintiff's plea for protection, he ordered the transfer of the
26

27   /////

28   ───────────────────────────
          [1] Cited page numbers refer to the numbers assigned by the ECF docketing system.

1            [infected San Quentin] inmates to High Desert without properly
2            testing them.  Due to his actions[,] the plaintiff contracted Covid-19 as a result.

3    SAC at 7.

4         Plaintiff alleges that defendant HDSP Warden was also responsible for the transfer of

5    infected inmates to HDSP.  SAC at 7.

6            He was also notified by [the] inmate appeals process that the
7            plaintiff was at risk of severe complications [from] Covid-19 due to Hypertension and that plaintiff was requesting single cell status and
8            release to protect him.  Despite [this], [plaintiff] remained housed with cellies who contracted Covid-19 and, as a result, plaintiff
9            contracted Covid-19  due to the failure of the Warden to release [him] or at minimum place [him] in a single cell due to his need for
10           social distancing and his high-risk medical status.

11    SAC at 7-8.

12         As to the third defendant, the HDSP CMO, plaintiff alleges that he "is responsible for

13    [e]nsuring that those inmates who are at high risk from . . . Covid-19 be considered for single

14    cells status along with the warden." SAC at 8.  As with the other two defendants, plaintiff alleges

15    that the CMO was notified of his "high risk for complications" through the inmate appeals

16    process.  *Id*.

17            His failure to properly test [and] isolate the incoming prisoners
18            from San Quentin and isolate [plaintiff] amounted to deliberate indifference.  His inaction directly caused the plaintiff to contract
19            Covid-19.  Although [defendants] randomly tested inmates, inmates were and are allowed to refuse testing[,] making the testing policies
20           inadequate.  This led to plaintiff's infection of Covid-19.

21    *Id.*

22         Plaintiff alleges that on or about January 5, 2021, the Covid-19 virus "entered the

23    population." SAC at 14.  According to attached medical records, plaintiff tested positive for

24    Covid-19 on January 5, 2021.  *Id.* at 17.  He claims that defendants' actions amounted to

25    deliberate indifference under the Eight Amendment.  *Id.*  He seeks damages and an injunction

26    granting him single-cell status.  *Id.* at 5.

27    /////

28    /////

1    III.  <u>Motion to Dismiss</u>

2        A.  <u>Failure to Exhaust Administrative Remedies</u>

3        Defendants assert that plaintiff's failure to exhaust administrative remedies as to his

4 claims is clear from the face of the complaint.  MTD at 10-15.  In opposition, plaintiff asserts that

5 copies of health care grievances attached to the SAC show he did exhaust administrative remedies

6 "and no remedy was granted."  ECF No. 28 ("Opp.") at 4.

7        1.  <u>Requirement to Exhaust CDCR Remedies</u>

8        Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

9 subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA,

10 "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

11 any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

12 such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Porter v.*

13 *Nussle*, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

14 seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An

15 inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

16 exhaustion of available administrative remedies.  *Ross v. Blake*, 578 U.S. 632, 638 (2016)

17 (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).

18        Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*

19 *v. Bock*, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

20 available administrative remedy, and that the prisoner did not exhaust that available remedy."

21 *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (*en banc*).  In the Ninth Circuit, a defendant

22 may raise the issue of administrative exhaustion in either (1) a motion to dismiss pursuant to Rule

23 12(b)(6), in the rare event the failure to exhaust is clear on the face of the complaint, or (2) a

24 motion for summary judgment.  *Id*. at 1169.

25        For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules,

26 including deadlines, as a precondition to bringing suit in federal court.  *Woodford*, 548 U.S. at 90

27 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

28 rules.").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of

1  proper exhaustion." *Jones*, 549 U.S. at 218; *see also Marella v. Terhune*, 568 F.3d 1024, 1027

2  (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

3  exhaustion' " (quoting *Jones*, 549 U.S. at 218)).

4          As of June 1, 2020, a prisoner is required to follow the procedures set forth in California

5  Code of Regulations, title 15, sections 3480-3487. [2] Cal. Code Regs. tit. 15, §§ 3480-3487 (eff.

6  June 1, 2020).  Inmates may submit a written grievance containing one or more claims, subject to

7  the requirements in section Cal. Code Regs., tit. 15, section 3482, to dispute a policy, decision,

8  action, condition, or omission by CDCR or CDCR staff that causes some measurable harm to the

9  inmate's "health, safety, or welfare." Cal. Code Regs. tit. 15, §§ 3481(a), 3482, 3482(a)(1) and

10  (b), 3482(a)(2) and (c), 3485(a)-(b). The grievance process now has two levels of review.  *Id*.

11  The new process requires the inmate to submit a grievance in writing to the Institutional Office of

12  Grievances (OOG) at the prison, reentry facility, or fire camp were they are housed within 30-

13  days.  *Id*.  The inmate shall submit the grievance on a form 602-1, if available, or by other means

14  provided by the institution.  *Id*.  If the inmate wishes to appeal the Institutional OOG decision,

15  they may do so in writing to the Office of Appeals (OOA) within 30-days.  *Id*.

16          The inmate must describe all information known and available regarding the claim,

17  including key dates and times, names and titles of all involved staff (or descriptions of those staff

18  members), and names and titles of all witnesses to the best of the claimant's knowledge. Cal.

19  Code Regs. tit. 15, §§ 3482(c)(2), 3482(c)(4), 3482(d)(3), 3485(d)(2), 3486(m), 3487, 3487(a).

20  Inmates must also include any and all supporting documents available.  *Id*.  Claims may be

21  rejected for any of the reasons provided in Cal. Code Regs., tit. 15, § 3487, including failure to

22  submit the claim within the applicable time frames, concerns an anticipated decision, duplicative,

23  claim concerns harm to someone other than the claimant, and the claim concerns the regulatory

24  framework of the grievance or appeal process itself.  *Id*.  Completion of the review process by the

25  Office of Appeals constitutes exhaustion of all administrative remedies available to a claimant.

26  /////

27
28          [2] Plaintiff's inmate grievance No. HDSP-HC2000-0502 was submitted on July 11, 2020.
SAC at 32.

1    *Id.*  A claim is not exhausted if it was disallowed pursuant to subsections 3482(d)(3) or

2    3485(d)(3) or rejected pursuant to subsection 3487(a).  *Id.*

3              2.  <u>Plaintiff's Grievances</u>

4              On July 11, 2020, plaintiff submitted grievance No. HDSP-HC2000-0502, which states:

5    "I am high risk medical due to hypertension and am at greater risk of contracting and adversely

6    suffering from the coronavirus.  I'm seeking early release to protect myself."  SAC at 32.

7              This grievance was processed, and prison officials responded in writing.  On October 28,

8    2020, the Headquarters' Level Response identified the issue as "COVID-19 (Expedited Release)"

9    and noted that the grievance concerned "[e]arly release due to high medical risk of COVID-19."

10   SAC at 29.  The reviewer stated in part:

11                   [CDCR] developed a COVID-19 Risk Score based upon the
                     likelihood of a person developing serious Covid-19 related illness. .
12                   . . [Inmates] with a COVID-19 Risk Score of 4 or higher will
                     undergo additional custodial screening to determine which
13                   individuals will qualify for expedited release. Because older people
                     are more likely to have COVID-19 complications, inmates ages 65
14                   or older automatically have a COVID-19 risk score of 4. . . . Your
                     current risk score is 1. . . . If you are determined to be eligible for
15                   release, you will be notified.

16   SAC at 30.[3]

17             Plaintiff's grievance does not identify any of the named defendants, nor explain their

18   involvement in any alleged injury to plaintiff.  It makes no mention of the transfer of allegedly

19   infected inmates from San Quentin to HDSP, nor of prison officials' failure to adequately test

20   incoming inmates, which form the gravamen of the instant complaint.  While the SAC asserts

21   plaintiff was harmed by contracting COVID-19 due to officials' claimed indifference, the

22   grievance was submitted six months before plaintiff tested positive and does not identify any

23   injury to plaintiff as of the date of its filing.  Rather, in this grievance, plaintiff seeks early release

24   due to his allegedly heightened risk of COVID-related complications (though the administrative

25   response contradicts this claim, noting that, in July 2020, plaintiff was assessed as being at low

26

27             [3] A later medical record, dated January 6, 2021, states in part: "[Plaintiff] has a Covid
     weighed risk score of 2 based on what is described as ischemic heart disease and hypertension
28   although records do not support this[.]"  SAC at 27.

1    risk for COVID-related complications).  Under CDCR regulations, this grievance cannot be said

2    to exhaust administrative remedies for the claims asserted in the SAC.

3              Plaintiff has attached a copy of a second grievance to the SAC, though it does not appear

4    to have been processed.  Dated November 26, 2020, this grievance states:

5              Petitioner currently housed in [cell number] was just notified that
             his prior cellie . . . tested positive for COVID-19..  Petitioner is
6              constantly forced to be housed with individuals that are now proven
             to be carriers of the disease.  Petitioner is 42 years old and has
7              hypertension making him more likely to suffer or die from COVID-
             19.  Also, the medical staff treat infected patients and then make
8              contact with the petitioner.

9    SAC at 34-35.

10             Assuming *arguendo* that this grievance was submitted and reviewed, it does not identify

11   any of the named defendants in this action, nor explain their involvement in plaintiff's alleged

12   injury—or, more precisely, his *risk* of injury—as of the grievance date.  It does not mention the

13   transfer of allegedly infected inmates from San Quentin, which forms the basis of the current

14   action.  Rather, the grievance complains that unnamed, COVID-exposed medical staff are putting

15   plaintiff at risk of contracting the virus.  Under CDCR regulations, this grievance is also

16   insufficient to exhaust administrative remedies as to claims in the SAC.

17       B.  Failure To State a Claim

18       Defendants argue that the SAC fails to allege a cognizable Eighth Amendment claim against

19   any defendant.  In opposition, plaintiff essentially reasserts his claims in the SAC.

20           1.  Deliberate Indifference Standard

21             To prevail on a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a

22   federal constitutional or statutory right; and (2) that the violation was committed by a person

23   acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*,

24   297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim

25   unless the facts establish the defendant's personal involvement in the constitutional deprivation or

26   a causal connection between the defendant's wrongful conduct and the alleged constitutional

27   deprivation.  *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d

28   740, 743-44 (9th Cir. 1978).

1        Generally, deliberate indifference to a serious medical need presents a cognizable claim

2   for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

3   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  According to *Farmer v. Brennan*, 511 U.S. 825, 947

4   (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows

5   that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to

6   take reasonable measures to abate it." *Id*.  The deliberate indifference standard "is less stringent

7   in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated

8   individuals because 'the State's responsibility to provide inmates with medical care does not

9   conflict with competing administrative concerns." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th

10  Cir. 1992) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)), overruled on other grounds by

11  *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

12       Specifically, a determination of "deliberate indifference" involves two elements: (1) the

13  seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to

14  those needs.  *McGuckin*, 974 F.2d at 1059.

15       First, a serious medical need exits if the failure to treat a prisoner's condition could result

16  in further significant injury or the "unnecessary and wanton infliction of pain." *Id*. (citing *Estelle*,

17  429 U.S. at 104).  Examples of instances where a prisoner has a "serious" need for medical

18  attention include the existence of an injury that a reasonable doctor or patient would find

19  important and worthy of comment or treatment; the presence of a medical condition that

20  significantly affects an individual's daily activities; or the existence of chronic and substantial

21  pain.  *McGuckin*, 974 F.2d at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th

22  Cir. 1990).

23       Second, the nature of a defendant's response must be such that the defendant purposefully

24  ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate

25  indifference" to be established.  *McGuckin*, 974 F.2d at 1060.  Deliberate indifference may occur

26  when prison officials deny, delay or intentionally interfere with medical treatment, or may be

27  shown by the way in which prison physicians provide medical care." *Hutchinson v. United*

28  *States*, 838 F.2d 390, 392 (9th Cir. 1988).  In order for deliberate indifference to be established,

1     there must first be a purposeful act or failure to act on the part of the defendant and resulting

2     harm. *See McGuckin*, 974 F.2d at 1060. "A defendant must purposefully ignore or fail to

3     respond to a prisoner's pain or possible medical need in order for deliberate indifference to be

4     established." *Id.* Second, there must be resulting harm from the defendant's activities. *Id.* The

5     needless suffering of pain may be sufficient to demonstrate further harm. *Clement v. Gomez*, 298

6     F.3d 898, 904 (9th Cir. 2002).

7        2.  The SAC

8        Plaintiff alleges in the SAC that he was "at risk of severe complications [from] Covid-19

9     due to high blood pressure," and that this allegedly heightened risk entitled him to single-cell

10    status or early release from prison. SAC at 7. Plaintiff's claim that he was at especially high risk

11    of harm from the Covid-19 virus is contradicted by documents attached to complaint, which

12    indicate that plaintiff's assessed Covid-19 risk score was low, making him ineligible for

13    heightened Covid-related precautions (in contrast to elderly prisoners or those with serious

14    illnesses). *Id*. at 30. Although plaintiff understandably feared contracting Covid-19, he has not

15    alleged a serious medical condition (other than ordinary susceptibility to infection by a highly

16    contagious virus) under the two-pronged test for medical indifference.

17        Because plaintiff's allegations concern housing and custody decisions, the court also

18    reviews his allegations under the general Eighth Amendment standard applicable to non-medical

19    claims. A prison official violates the Eighth Amendment's prohibition against cruel and unusual

20    punishment "only when two requirements"—one objective, one subjective—"are met." *Farmer*,

21    511 U.S. at 834. Under the objective prong, the inmate must show he is incarcerated under

22    conditions posing a substantial risk of serious harm. *Id*. at 833, 837. "[T]here is no question that

23    an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does

24    not take adequate measures to counter the spread of the virus. Courts have long recognized that

25    conditions posing an elevated chance of exposure to an infectious disease can pose a substantial

26    risk of serious harm." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y 2020).

27        Here, plaintiff has not alleged that he was housed with any of the transferred San Quentin

28    inmates who allegedly were infected with Covid-19. It is not clear what contact, if any, he had

1    with them.  Plaintiff does allege that, for some unspecified period, he "remained housed with

2    cellies who contracted Covid-19, as a result the plaintiff contracted Covid-19[.]"  SAC at 7.

3    While this allegation lacks precision, construing it in plaintiff's favor it is sufficient to plead an

4    objective risk of substantial harm.

5         However, turning to prong two, deliberate indifference, plaintiff has not causally linked

6    the named defendants to his alleged harm: contracting Covid-19 in or around January 2021.  *See*

7    *Johnson v. Allison*, No. 2:21-cv-0828 KJN P, 2022 WL 1444409, *8 (E.D. Cal. May 6, 2022)

8    (plaintiff "fails to set forth facts demonstrating that he became infected with COVID-19 as a

9    result of [his] housing rather than as a result of being previously exposed to COVID-19" and thus

10   fails to plead a cognizable civil rights claim).

11        Nor do plaintiff's allegations, if taken as true, show that HDSP's Covid-19 protocols

12   amounted to deliberate indifference. The SAC and attached documents indicate that these

13   protocols included frequent assessments of each inmate's risk of serious Covid-related

14   complications and the random testing of inmates transferred from San Quentin.  SAC at 8.  In

15   response to plaintiff's grievance, a non-defendant prison official noted that any inmate that

16   showed symptoms of Covid-19 would be tested for the virus.  *Id*. at 30.  Plaintiff's wish for more

17   rigorous protocols, and/or his preference to be single-celled or released from prison due to the

18   pandemic, are insufficient to plead deliberate indifference under the Eighth Amendment.  *See*

19   *Chunn*, 465 F. Supp. 3d at 204 (petitioners could not meet objective prong of deliberate

20   indifference standard in light of prison's extensive countermeasures, which showed officials were

21   "taking the threat of COVID-19 seriously . . . rather than consciously turning a blind eye to any

22   known danger"); *Grinis v. Spaulding*, 459 F. Supp. 3d 289, 292 (D. Mass. 2020) ("These

23   affirmative steps may or may not be the best possible response to the threat of COVID-19 within

24   the institution, but they undermine an argument that the respondents have been actionably

25   deliberately indifferent to the health risks of inmates.").

26   /////

27   /////

28   /////

In sum, plaintiff has failed to plead a cognizable Eighth Amendment claim against any defendant.  The undersigned will recommend that defendants' motion to dismiss the SAC be granted.[4]

IV.  Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 25) be granted and the Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 15, 2022.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[4] In light of the foregoing the court does not reach defendants' qualified immunity argument.

11